UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BETHESDA HEALTH, INC., *et al.*,

    Plaintiffs,

v.

NORRIS COHRAN, *in his official capacity as Acting Secretary of Health & Human Services, United States Department of Health & Human Services*,

    Defendant.

Civil Action No. 18-cv-875 (BAH)

Chief Judge Beryl A. Howell

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, a group of hospitals in the State of Florida, initiated the instant action, on April 13, 2018, to overturn a final payment determination by the Provider Reimbursement Review Board ("Board"), an administrative tribunal within defendant Department of Health and Human Services ("HHS"), that denied inclusion of Florida Low Income Pool ("LIP") patients in the calculation of Medicare Disproportionate Share Hospital ("DSH") payments to each plaintiff hospital. Compl. ¶¶ 1–3, ECF No. 1. Following eighteen months of litigation, plaintiffs prevailed on summary judgment, *see Bethesda Health, Inc. v. Azar* ("*Bethesda I*"), 389 F. Supp. 3d 32, 53 (D.D.C. 2019), and on appeal, *see Bethesda Health, Inc. v. Azar* ("*Bethesda II*"), 980 F.3d 121, 123 (D.C. Cir. 2020). Now, when litigation on the merits of plaintiffs' claims is over, the Public Health Trust of Miami-Dade County, Florida, d/b/a Jackson Memorial Hospital ("JMH"), moves to intervene, pursuant to Federal Rule of Civil Procedure 24, *see* JMH Mot. Intervene ("JMH Mot."), ECF No. 35, despite having previously participated in this litigation as a plaintiff, until voluntarily dismissing its claims before disposition of summary judgment, *see* Stipulation of Dismissal Without Prejudice as to Jackson Memorial Hospital Only

1

("Stipulation of Dismissal"), ECF No. 25.  For the reasons provided below, the motion to intervene is denied as wholly untimely.

I.  **BACKGROUND**

Familiarity with the procedural history of this case, as comprehensively detailed in this Court's July 23, 2019 summary judgment decision, *Bethesda I*, 389 F. Supp. 3d at 34–40, is assumed and only briefly summarized here.

Plaintiffs provide uncompensated inpatient hospital services to uninsured and underinsured patients.  *Bethesda I*, 389 F. Supp. 3d at 34.  Congress has recognized that "any hospital that serves a disproportionately large percentage of low-income patients—known as a disproportionate share hospital (DSH) – should be reimbursed at a higher rate," based on the premise that "the more low-income patients a hospital treats, the more it costs on average to care for Medicare patients."  Compl. ¶ 29 (quoting *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 177–78 (D.C. Cir. 2008)).  To this end, acute-care hospitals are to receive upward adjustments to standard reimbursement rates for inpatient treatment of low-income patients.  *Id.* ¶¶ 30–31 (citing 42 U.S.C. § 1395ww(d)(5)(F)).  These adjustments are known as "DSH adjustments" or "DSH payments."  *Id.*  To calculate which hospitals qualify for DSH adjustments, the Centers for Medicare & Medicaid Services ("CMS") adds together two separate fractions to determine a hospital's "disproportionate patient percentage."  *Id.* ¶ 31 (citing 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I); (d)(5)(F)(v); and 42 C.F.R. § 412.106(c)(1)).  The first fraction, the "Medicare fraction," is based on the "inpatient days of individuals who are eligible for Supplemental Security Income ('SSI') and entitled to benefits under Medicare Part A."  *Id.* (citing 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)).  The second fraction, the "Medicaid fraction," is based on "the number of Medicaid patients that the provider serves."  *Id.*  When combined, these

percentages "provide a proxy for the total low-income patient percentage." *Id.* (quoting *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013)).

Relevant to calculating the Medicaid fraction, HHS and states have flexibility under the Social Security Act ("Act") to "explore different approaches to providing medical assistant to individuals not otherwise eligible for Medicaid," such that HHS may "'waive compliance with any of the requirements' of the Act and allow states to carry out 'experimental, pilot, or demonstration project[s]' that are 'likely to assist in promoting the objectives' of Medicaid . . . ." *Id.* ¶ 27 (quoting 42 U.S.C. § 1315(a), (e)).  These waivers, known as "section 1115 waivers," *id.*, help ensure that states receive federal matching funds for "medical assistance" provided to populations who are otherwise ineligible for "traditional" Medicaid, *id.* ¶ 28 (citing 42 U.S.C. § 1315(a)(2)(A)).  To accommodate these waivers, the Medicare statute explicitly authorizes hospitals to incorporate "patient days of patients not eligible for medical assistance under an approved State plan but who are regarded as such because they receive benefits under a demonstration project approved under [a section 1115 waiver]." *Id.* ¶ 33 (citing 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)).  "In plain English, the Medicare DSH formula takes into account the number of patient days for those patients eligible for Medicaid, and may also include patient days for those patients ineligible for Medicaid, but who receive benefits under a Medicaid 'demonstration project.'" *Id.* (quoting *Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Human Servs.*, 747 F.3d 172, 175 (3d Cir. 2014)).

Pursuant to this statutory scheme, in 2006, the Florida legislature authorized, and HHS approved, a section 1115 waiver to reform Florida's Medicaid program. *Id.* ¶ 38 (citing FLA. STAT. § 409.91211 (2006)).  Part of this reform included a provision to provide matching federal funds for medical assistance furnished to individuals in the State of Florida who "received

3

inpatient services as members of [a] Low Income Pool Medicaid Eligibility Group ('LIP MEG') identified in the Special Terms and Conditions of the waiver." *Id.* ¶ 1. The LIP MEG provision of the waiver provides "direct payment and distributions to safety-net providers in Florida 'for the purpose of providing coverage to the uninsured through provider access systems,'" *id.* ¶ 39 (quoting CENTERS FOR MEDICARE & MEDICAID, U.S. DEP'T HEALTH & HUMAN SERVS., SPECIAL TERMS AND CONDITIONS NO. 11-W-00206/4, MEDICAID REFORM SECTION 1115 DEMONSTRATION 91 (2006)), and under the terms of this waiver, each of the hospitals in the provider access system, including plaintiffs, "agreed to provide inpatient services to the uninsured and underinsured as a condition of receiving LIP payments," *id.* ¶ 40.

At issue in plaintiffs' complaint was the degree to which calculation of the Medicaid fraction calculation was required to incorporate "LIP waiver days," *i.e.* the measure of services provided to "specific and identifiable uninsured and underinsured individuals in the fiscal years in question" under the LIP MEG provision. *Id.* ¶ 44. Plaintiffs each received a "year-end Medicare determination, issued by fiscal intermediaries working under the [HHS] Secretary's direction," which excluded LIP waiver days from the plaintiffs' DSH payment calculations, resulting in lower reimbursements. *Id.* ¶ 45. Plaintiffs appealed the fiscal intermediary's decisions to the Board, *id.* ¶ 46, which, on February 12, 2018, upheld the financial intermediary's decision to exclude the LIP waiver days from compensation, *id.* ¶ 48 (citing Compl., Ex. A, Board Decision No. 2018-D21 ("Board Decision") at 2, ECF No. 1-1). Pursuant to 42 C.F.R. § 405.1875(a) and (b), plaintiffs petitioned for review by the CMS Administrator, *id.* ¶ 50, which review was denied, prompting plaintiffs' claim before this Court that the Board's decision was arbitrary and capricious under the Administrative Procedure Act ("APA"), *id.*

JMH, a named plaintiff at the time the instant action was filed, participated in this litigation for fourteen months, until June 13, 2019, when JMH voluntarily stipulated to the dismissal of all claims against HHS. *See* Stipulation of Dismissal at 1. Six weeks later, on July 23, 2019, summary judgment was granted in plaintiffs' favor, concluding that LIP waiver days "should . . . [be] included in the relevant DSH calculations," and resulting in an order vacating the Board's decision and remanding the case for further proceedings before the agency consistent with the ruling. *Bethesda I*, 389 F. Supp. 3d at 34, 53. On HHS' appeal, the D.C. Circuit, on November 13, 2020, "embraced the district court's opinion as the law of this circuit" and affirmed. *Bethesda II*, 980 F.3d at 123.

On January 7, 2021, one day after the Circuit mandate issued, *see* Mandate, U.S. Court of Appeals for the District of Columbia Circuit, ECF No. 34, JMH moved to intervene due to concern that its "interests may not be adequately protected" without intervention, *see* JMH Mem. P&A Supp. Mot. Intervene ("JMH Mem.") at 1, ECF No. 35. The parties in this litigation all oppose this motion, *see* Pls.' Opp'n JMH Mot. Intervene ("Pls.' Opp'n") at 1, ECF No. 39; Def.'s Opp'n Mot. Intervene ("Def.'s Opp'n") at 1, ECF No. 40, which became ripe for resolution on January 28, 2021.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides that "[o]n timely motion," the Court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). To qualify for intervention as of right, four requirements must be satisfied: "(1) the application to intervene must be timely; (2)

the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative to the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876 (D.C. Cir. 2008) (quoting *Sec. Exch. Comm'n v. Prudential Sec. Inc.*, 136 F.3d 153 (D.C. Cir. 1998)).  A movant failing to meet the requirements to intervene as a matter of right, may nonetheless be allowed permissive intervention, pursuant to Rule 24(b), if the movant "[o]n timely motion . . . has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).[1]

### III. DISCUSSION

JMH moves to intervene as a plaintiff in this action eighteen months after voluntarily dismissing, without prejudice, all its claims against HHS, and after this case has been fully resolved on summary judgment and affirmed by the D.C. Circuit.  *See Bethesda I*, 389 F. Supp. 3d at 53; *Bethesda II*, 980 F.3d at 123.  The parties remaining in this action unanimously oppose this motion, arguing that JMH is not entitled to intervention as of right, and should not be granted permissive intervention.  *See* Pls.' Opp'n at 1; Def.'s Opp'n at 1.  The Court agrees that JMH's motion is untimely must be denied.[2]

---

[1]     Prospective intervenors as of right are further required to demonstrate Article III standing to intervene as of right, *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003), though "[i]t remains . . . an open question in this [C]ircuit whether Article III standing is required for permissive intervention," *Defs.' Of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013)).  The parties do not dispute JMH's standing to intervene, which is evidenced by JMH's "injury in fact from the improper calculation of its DSH payments," JMH Mem. at 6, and its similar position to plaintiffs with respect to causation and redressability, having been a plaintiff prior.

[2]     Since JMH's intervention motion is denied for untimeliness, the other arguments posited by plaintiffs and defendant, including that JMH has "no interest in the execution of the other Hospitals' judgment," Pls.' Opp'n at 7; *see* Def.'s Opp'n at 2, and that "denying the motion will not impact [JMH's] interests," *id.*, which arguments relate to the second and third factors for determining whether intervention as of right is appropriate, need not be addressed.

6

### A. Timeliness Requirement Under Rule 24

As the text of Rule 24 makes plain, intervention either as a matter of right or by permission, requires a "timely motion." FED. R. CIV. P. 24(a), (b). "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). On the one hand, "a district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties." *Id*. On the other hand, an untimely motion, as a threshold matter and under the "explicit language of [Federal Rule of Civil Procedure 24], . . . 'must be denied.'" *Amador Cty. v. United States DOI*, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973) and citing *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980)). District courts are to exercise "sound discretion" in determining timeliness, *NAACP*, 413 U.S. at 366, which "is to be judged in consideration of all the circumstances, especially weighing the factors of [1] time elapsed since the inception of the suit, [2] the purpose for which intervention is sought, [3] the need for intervention as a means of preserving the applicant's rights, and [4] the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Austl. Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1295).

Notably, "[c]ourts are generally reluctant to permit intervention after a suit has proceeded to final judgment, particularly where the applicant had the opportunity to intervene prior to judgment." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) (citing *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999)), *United States v.*

*ABA*, 118 F.3d 776, 783 n.5 (D.C. Cir. 1997) and 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1916 (2d ed. 1986)).

      **B.**      **Pending Intervention Motion is Untimely**

Consideration of the four relevant timeliness factors confirms that JMH's motion is a paradigm untimely motion for intervention. The first factor directing consideration of the time elapsed since the inception of the suit weighs heavily against JMH. Time elapsed is to be "measured from when the prospective intervenor 'knew or should have known that any of its rights would be directly affected by the litigation.'" *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quoting *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 433–34 (D.C. Cir. 1989), *rev'd on other grounds sub nom. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)). Typically, post-judgment intervention is not permissible except when a party seeks to protect its interests on appeal, *see Associated Builders*, 166 F.3d at 1257 (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), and *Dimond v. D.C.*, 792 F.2d 179, 193 (D.C. Cir. 1986)), or where "the intervenor's interests were inadequately represented," *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.* ("*CFPB*"), 304 F.R.D. 19, 23 (D.D.C. 2014). Even in those exceptional circumstances, post-judgment intervention is generally untimely when, as here, proceedings are near completion and the moving party had notice of the proceeding. *See, e.g.*, *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) (affirming the district court's denial of motion to intervene as untimely where the motion was filed on the eve of settlement). In the exceptional circumstance when a motion to intervene is granted after a circuit court has issued its decision, the prospective intervenor has had "no strong incentive to seek intervention . . . at an earlier stage," and "little reason to anticipate [] the breadth of the panel's holding . . . ." *EMW Women's Surgical Center, P.S.C. v. Friedlander*, 831

F. App'x. 748, 751 (6th Cir. 2020) (quoting *Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016)).

None of these exceptional circumstances apply here. JMH was well aware that this lawsuit implicated its rights since JMH was actually a plaintiff when the instant claims were filed in April 2018. *See generally* Compl. Indeed, JMH fully participated in this action as a party for fourteen months before voluntarily dismissing all claims in June 2019, almost two years ago, *see* Stipulation of Dismissal at 1, thereby terminating its participation in this case. Moreover, in July 2019, less than two months after JMH voluntarily dismissed its claims, this Court issued summary judgment for the remaining plaintiffs and vacated the Board decision upon which JMH's claims were based, but this win for the plaintiffs prompted no action by JMH to rejoin this case. Instead, JMH now moves to intervene years after being aware that its rights would be directly affected by this litigation.

Second, as to the purpose for which intervention is sought, JMH explains it seeks intervention "solely for . . . inclusion in this Court's remand of the matter for further administrative proceedings consistent with the mandate of the D.C. Circuit." JMH Mem. at 1. By seeking only to participate in the remedial phase of the case, JMH Reply at 6, JMH "expressly disavow[s] any desire to reopen any previously-litigated question," *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (1972). Further, JMH points to this remedial posture as another exception to the timeliness requirement. Indeed, "timeliness presents no automatic barrier to intervention in post-judgment proceedings where substantial problems in formulating relief remain to be resolved." *Id.* Even if a "significant time [has] elapse[d] between" the beginning of the case and filing for intervention, a "limited purpose" belying intervention can "strongly mitigate[] the defect." *Am. Tel. & Tel. Co.*, 642 F.2d at 1295 (granting motion to

9

intervene where existing party has failed to appeal in a case affecting a prospective intervenor's rights).

Thusly framed by JMH, its intervention now would simply permit re-joinder as a plaintiff on remand for administrative reconsideration in light of *Bethesda I* and *II*. This is an over-simplification of the purpose of this intervention, however. If HHS is correct that JMH's Medicare reimbursement claims are time-barred from either administrative or judicial review, Def.'s Opp'n at 4–6, allowing intervention would circumvent applicable limitations periods on claims voluntarily dismissed by JMH and for which the books have been closed. Intervention is not a procedural tool to revive otherwise stale claims. *See, e.g., Waste Mgmt. of Ill. V. U.S. Env'l Protection Agency*, 945 F.2d 419, 421–22 (D.C. Cir. 1991) (declining to consider ripeness of a party's petition for review of an agency regulation where the party's intervention was filed "well beyond" the Resource Conservation and Recovery Act's ("RCRA") ninety-day statutory period); *Process Gas Consumers Group v. FERC*, 912 F.2d 511, 515 (D.C. Cir. 1990) (disallowing intervenor from assuming role of petitioner after original petitioner withdrew because, in part, motion to intervene was filed beyond RCRA's ninety-day statutory period and was considered untimely); *Eagle-Picher Industries, Inc. v. United States*, 759 F.2d 905, 914 (D.C. Cir. 1985) (finding that "[e]xcept where events occur or information becomes available after the statutory review period expires that essentially create a challenge that did not previously exist . . . [the court] will be very reluctant, in order to save a late petitioner from the strictures of a timeliness requirement, to engage in a retrospective determination of whether we would have held the claim ripe had it been brought on time.").

This last point is highlighted in consideration of the third factor concerning the need for intervention as a means of preserving the applicant's rights. JMH contends that its interests

"may not be adequately protected on remand, even though [JMH] was a party to the vacated Board Decision," JMH Mem. at 5, because after the D.C. Circuit's remand, "the Government indicated that it had no intent to recalculate [JMH's] DSH payments, despite [JMH] being one of the entities with claims in the now-vacated" Board decision, JMH Reply at 5 n.1; *see also* JMH Mem. at 5–6 (citing *Dimond*, 792 F.2d at 194 and *Am. Tel. & Tel. Co.*, 642 F.2d at 1295). This argument, however, misconstrues the applicable standard in this Circuit for determining a prospective intervenor's responsibility for identifying whether litigation would directly affect their rights within a reasonable timeframe. The standard is not when JMH was told for certain that its interests might not be "adequately represent[ed]" upon remand to the agency, FED. R. CIV. P. 24(a)(2), but when it reasonably *should* have known that its rights would be directly affected by the proceedings, and JMH was aware of this fact when it joined as a plaintiff in this lawsuit and should have known this fact when the February 2018 Board decision was vacated in the summary judgment order issued by this Court. *See Roeder*, 333 F.3d at 233. Nevertheless, not only did JMH voluntarily dismiss its claims and extricate itself from this lawsuit, but also even after summary judgment was granted to plaintiffs and throughout the appeal to the D.C. Circuit, JMH did not seek to re-join the lawsuit by moving to intervene. "The critical inquiry in every such case is whether in view of all circumstances the intervenor acted promptly after the entry of final judgment." *McDonald*, 432 U.S. at 395–96. JMH's failure to identify that its interests were "precariously situated" in light of this Court's decision or the subsequent appeal decisively show that it did not act promptly as required. *See Perles v. Kagy*, Civil Action No. 01-0105 (AK), 2005 U.S. Dist. LEXIS 18894, at *16 (D.D.C. Aug. 29, 2005) (denying intervention post-judgment where movant, who had voluntarily deposited $1,000,000 into a trust

11

account as security for a party's lien, was an informal participant in litigation for over five years and was "aware that his interest was precariously situated").

Furthermore, JMH fails to demonstrate that intervention is necessary to preserve the rights it previously voluntarily dismissed. Certainly, the final judgment in this case excluded JMH from the list of plaintiffs to whom the judgment applies. *See Bethesda I*, 389 F. Supp. 3d at 34 n.1 ("Specifically, Plaintiffs are Bethesda Health, Inc.; Halifax Health; Indian River Memorial Hospital; Lakeland Regional Medical Center, Inc.; LHP Hospital Group LLC; Martine Health System; Naples Community Hospital; North Brevard County Hospital District; Sarasota Memorial Hospital; and South Broward Hospital District, each doing business as various hospitals."). JMH contends that intervention is permissible so that the JMH may "go before the agency in the remand proceedings that will fill the void left by the vacatur of its Board [d]ecision." JMH Reply at 7. Plaintiffs point out that JMH may still have some right to relief as to HHS if it were to bring an independent action, *see* Pls.' Opp'n at 6, since the instant action may operate in JMH's favor "as legal precedent," *Alaska Excursion Cruises, Inc. v. United States*, 603 F. Supp. 541, 551 (D.D.C. 1984). In such an independent lawsuit, JMH may have to litigate any challenge to the timeliness of its claim for review, but would do so without tying-up resolution of this case for the long-standing parties in this lawsuit. Having surrendered its rights with a voluntary dismissal, this action is no longer an apt vehicle for preserving JMH's rights.

Finally, the fourth factor—"the probability of prejudice to those already parties in the case," *British Am. Tobacco Austl. Servs.*, 437 F.3d at 1238—weighs against allowing intervention here. Despite the purportedly limited remedial purpose for which intervention is sought, JMH's intervention would likely prejudice the existing parties. While JMH urges this Court to weigh "whether any delay in seeking intervention unfairly disadvantage[s] the original

12

parties," JMH Reply at 4 (quoting *Roane*, 741 F.3d at 151), and asserts that its involvement now "would generate no post-judgment proceedings once added to the case," *id.*, or "any undue or unnecessary delays," *id.* at 5, these conclusory statements are hotly disputed.³ Plaintiffs argue that JMH's intervention would "prejudice the Hospitals . . . [by] 'disrupting a final judgment' and delaying its execution at a time when the Hospitals are attempting to convert their hard-won judgment into additional Medicare reimbursement on remand." Pls.' Opp'n at 6 (quoting *CFPB*, 304 F.R.D. at 23). HHS adds that "intervention . . . may cause further, unnecessary delay for the parties to the action" because "the Secretary must implement the judgment in a timely manner, which will be no small task for the number of hospitals subject to the judgment." Def.'s Opp'n at 4. Certainly, adding JMH as an intervenor-plaintiff at this stage would necessarily require additional documentation and review to support the complex calculations necessary to fulfill the remedial aspects of this litigation, resulting in additional delay.

Moreover, as plaintiffs aptly note, despite JMH's intended scope of intervention, JMH "admits that it intends to claim that this Court's judgment entitles it to relief on remand to the agency," Pls.' Opp'n at 6 (citing JMH Mem. at 5)—a position that HHS will likely contest, as evidenced by HHS's assertion that JMH's claims are now time barred, Def.'s Opp'n at 4–6. Thus, JMH's belated intervention would "serve only to delay further the conclusion of [a] long-running case for the existing parties." *Love v. Vilsack*, 304 F.R.D. 85, 91 (D.D.C. 2014) (denying intervention when "the litigation [was] quite advanced" and intervention would cause

---

³ As support for theses assertion, JMH cites two inapposite cases. In *Am. Tel. & Tel. Co.*, 642 F.2d at 1294, intervention was permitted as timely when the movant-intervenor "did not seek to present evidence or argument," JMH Reply at 4, but, unlike here, in that case the motion to intervene was filed shortly after appeal had been noticed, when it became apparent that the prospective intervenor's interests would not be protected on appeal. JMH also relies on *Washington All. of Tech. Workers v. United States Dep't of Homeland Security*, 395 F. Supp. 3d 1, 19 (D.D.C. 2019), to buttress its claim that intervention is permissible when it will "not disrupt th[e] litigation or unfairly disadvantage any party," JMH Reply at 5, but in that case, unlike here, the intervenor moved to intervene early in the proceedings, before the government had even filed an answer to the complaint.

13

delay by "requir[ing] further proceedings to address new issues and potentially new factual development"). Additional litigation, further delay and disruption of the final judgment are all considerations weighing heavily against intervention. *See CFPB*, 304 F.R.D. at 23.[4]

In sum, JMH's motion to intervene at the eleventh hour is untimely and must be denied. As such, JMH's request for permissive intervention under Rule 24(b) is likewise denied. *See NAACP*, 413 U.S. at 365 ("Whether intervention be claimed of right or as permissive, it is at once apparent . . . that the application must be 'timely.'").

## IV.   ORDER

For the foregoing reasons, Jackson Memorial Hospital has not demonstrated entitlement to intervene as of right or by permission under Federal Rule of Civil Procedure 24. Accordingly, it is hereby

**ORDERED** that Jackson Memorial Hospital's Motion to Intervene is **DENIED.**

**SO ORDERED.**

Date:  February 16, 2021

_____
BERYL A. HOWELL
Chief Judge

---

[4] JMH accuses the parties of being "disingenuous" to suggest that "it would be somehow unfair for [JMH] to re-join for reasons other than purported delays," JMH Reply at 5 n.1, because the voluntary dismissal was "informed by Plaintiffs' counsel in its representation of [JMH]," *id.,* and occasioned by a "purported potential conflict that [plaintiffs'] counsel perceived with a concurrent lawsuit in which [JMH] was a party," *id.* This reason for JMH's dismissal is not helpful to JMH's pending motion but instead demonstrates that JMH voluntarily dismissed its claims for reasons having nothing to do any erroneous assessment of how its rights would be affected by resolution of this action.